# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### (Roanoke Division)

| | |
|---|---|
| **AUSTIN JENKINS**, on behalf of himself and others similarly situated, ) ) ) *Plaintiff*, ) ) v. ) **ELDOR AUTOMOTIVE POWERTRAIN USA LLC**, ) ) ) **SERVE**: R/A: C T Corporation System 4701 Cox Rd Ste 285 Glen Allen, VA, 23060 – 6808 ) ) ) ) ) *Defendant*. ) | Civil Case No.: 7:23cv00297  **COLLECTIVE CERTIFICATION REQUESTED**  **CLASS CERTIFICATION REQUESTED**  **JURY TRIAL DEMANDED** |

## PlAINTIFF'S FIRST COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND RELATED STATE STATUTES

COMES NOW Plaintiff Austin Jenkins ("Named Plaintiff"), through undersigned counsel, individually and on behalf of other members of the general public similarly situated (collectively, "Plaintiffs"), and files this Complaint against Defendant ELDOR Automotive Powertrain USA, LLC ("Eldor" or "Defendant") for failing to pay its employees for all time worked and recorded on employees' timesheets and seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA") and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 et seq. ("VWPA"). Named Plaintiff also asserts individual claims for retaliation when he complained about Defendant's unlawful conduct. Named Plaintiff's FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b), his VWPA claims are asserted as a class action pursuant to Fed. R. Civ. P. 23, and his remaining claims are asserted individually.

The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of all others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. INTRODUCTION

1. This case involves Defendant's refusal to pay Plaintiffs for all time worked before and after the official start and end times for their shifts. Eldor employees are required to arrive early and stay late to perform "handoffs" during which previous-shift employees update new-shift employees about machine maintenance issues, production quotas, material quality issues, and help adjust robots and clean machines. Despite recording the amount of time worked during these periods, Defendant refused to pay Plaintiffs for this time, saying withholding these payments saved Eldor "6 figures every year." Named Plaintiff was terminated shortly after repeatedly complaining about this unlawful practice despite consistently outstanding performance evaluations and no prior history of discipline.

## II. JURISDICTION AND VENUE

2. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq, the Virginia Wage Payment Act ("VWPA"), Va. Code Ann. § 40.1-29 et seq., Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3, and the common law of Virginia (Bowman claim).

3. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C.§ 1367.

5.      Venue lies in the Western District of Virginia ("this District") under 28 U.S.C. § 1391 because Defendant employed Named Plaintiff and other similarly situated employees in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant has done substantial business in this District.

### III.    THE PARTIES

#### Named Plaintiff

6.      Named Plaintiff Austin Jenkins is an individual, a United States citizen, and a resident of the Commonwealth of Virginia living in Roanoke, Virginia.

7.      At all times relevant herein, Austin Jenkins was employed by Defendant as an hourly, non-exempt Line Technician at Defendant's factory which is located at 888 International Parkway in Daleville, Virginia.

8.      Named Plaintiff brings this action on behalf of himself and those similarly situated, and he has given his written consent to bring this action to require Eldor to pay him and all others similarly situated for all time worked and recorded on timesheets and seeks all available remedies for Defendant's violations of the FLSA and VWPA. Pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), Named Plaintiff's consent is attached hereto as **Exhibit 1**.

#### Proposed Collective Class:

9.      All employees of Eldor working at 888 International Parkway in Daleville, Virginia, at any time between May 3, 2020, and May 3, 2023, who worked any time recorded on their timesheets before or after the official start and end time for their shift for which they were not compensated.

10.     Under 29 U.S.C. § 216(b), employees at Eldor must affirmatively opt-in to become members of the FLSA class.

**Proposed Fed. R. Civ. P. 23 Class**:

11. All employees of Eldor working at 888 International Parkway in Daleville, Virginia, at any time between May 3, 2020, and May 3, 2023, who worked any time recorded on their timesheets before the official start or after the official end time for their shift for which they were not compensated.

12. Under Fed. R. Civ. P. 23, employees at Eldor must affirmatively opt-out if they do not wish to be members of the VWPA class.

**Defendant Eldor Automotive Powertrain USA, LLC**

13. Defendant Eldor Automotive Powertrain USA, LLC ("Eldor") is a Limited Liability Company formed in the State of Delaware.

14. Eldor is part of an international conglomerate with offices in Europe, Asia, North America, and South America.

15. Eldor employed Plaintiff at its factory in Daleville, Virginia.

IV.  **LEGAL PRINCIPLES: COLLECTIVE ACTION ALLEGATIONS**

A. **The Fair Labor Standards Act**

16. The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the private sector and in federal, state, and local government. Defendant is subject to the FLSA's overtime requirements because its annual gross volume of sales is not less than $500,000.

17. Under the FLSA, employers must pay non-exempt hourly employees such as Named Plaintiff for all hours the employer suffers or permits them to work.

18. Moreover, non-exempt hourly employees must receive not less than time and one-half (1.5) their regular rate of pay that week for all hours worked beyond 40 each week.

19. Under 29 U.S.C. § 216(b), "Any employer who violates the provisions of section 206 or section 207 of this title [concerning minimum wage and overtime wages] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages" in addition to attorney fees and costs.

### B. The Virginia Wage Payment Act, Va. Code Ann. § 40.1-29, et seq.

20. The VWPA requires employers to timely pay employees for all hours worked as well as comply with the FLSA's minimum wage and overtime requirements.

21. Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2, the employee may bring an action, individually … against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

22. Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Id. "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.

23. Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Va. Code Ann. § 40.1-29(J).

24. Under Va. Code Ann. § 40.1-29(L), affected employees have three years to seek damages for violations of the VWPA.

## V. LEGAL PRINCIPLES: INDIVIDUAL ALLEGATIONS

### A. Virginia's Whistleblower Retaliation Statute, Va. Code Ann. § 40.1-27.3

25. Va. Code Ann. § 40.1-27.3 forbids employers from retaliating against employees when the employee "[o]r a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official …."

26. Employees who are retaliated against for internally reporting violations of state or federal law are entitled to "bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action." Va. Code Ann. § 40.1-27.3(C).

27. "The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs." Id.

### B. Bowman claim under Virginia Common Law

28. Under Virginia common law, employers are forbidden from retaliating against employees who complain about or oppose violations of a law that expresses a public policy of Virginia. This is known as a "Bowman claim."

29. The discharged employee must also show that he or she is within the class of persons the statute is designed to protect.

30. Under Virginia law, terminating an employee for internally complaining about violations of the VWPA is a recognized Bowman claim. See, e.g., Frank v. True Color Painters, LLC, 108 Va. Cir. 490, 492 (Fairfax County 2021).

6

31.     An employee alleging a valid Bowman claim may recover both compensatory and punitive damages.

## VI.     STATEMENT OF FACTS

32.     In September 2021, Named Plaintiff began working for Defendant as a Line Technician, operating and maintaining machines at Defendant's factory in Daleville, Virginia.

33.     Defendant agreed to pay Named Plaintiff $22/hr.,[1] plus required overtime bonuses for all hours worked beyond forty each week.

34.     As part of his job, Named Plaintiff was required to arrive before the official start time for his shift to receive information from workers who were finishing their shift to prepare Named Plaintiff to work his shift.  This information includes any problems that resulted in more than 10-20 minutes of downtime, how many more parts need to be produced for a specific product, and any quality issues with incoming material or finished parts. In addition, technicians would sometimes help each other adjust robots, clean machines, and verify incoming material codes against Production Order paperwork

35.     Named Plaintiff was also required to stay after the official end time for his shift to provide similar information to workers who were arriving to begin working their shift.

36.     These before-shift and after-shift activities are called "handoffs."

37.     Initially, Defendant paid Named Plaintiff for most of the time worked during these handoffs but appeared to subtract a few minutes each day worked for an unknown and unstated reason.  (See, e.g., **Exhibit 2**) (showing Named Plaintiff worked 12.3 hours on May 2, 2022, between 5:48AM and 6:06 PM but was paid for only 12.27 hours and worked 12.35 hours on May 6, 2022, between 5:39 AM and 6:10 PM but was paid for only 12.33 hours.

---

[1] Named Plaintiff received an increase to $22.33/hr. on March 7, 2022, $23.33/hr. on May 1, 2022, and $23.68/hr. on September 7, 2022.

7

38.     Named Plaintiff did not initially realize these relatively small amounts were being omitted from his paychecks.

39.     On June 5, 2022, soon after Named Plaintiff discovered his wages were being unlawfully withheld, Named Plaintiff started a union organization page ("**Exhibit 3**") on www.unitworkers.com and invited seventeen co-workers. Named Plaintiff hoped a union might have enough leverage to resolve the wage theft issue without risking his job.

40.     While most co-workers Named Plaintiff invited supported forming a union, the effort failed because only six were willing to sign the petition. (See id.) To date, Named Plaintiff is unaware of any other activity taken to seek unionization.

41.     In September 2022, Named Plaintiff received his first evaluation (**Exhibit 4**).

42.     To receive a pay increase, an employees must score at least 50 points. A score of 75 or above triggers the maximum pay increase. (See id.)

43.     Named Plaintiff received 96 out of a possible 100 points. (See id.)

44.     As time went by, Defendant changed its policy to pay employees for hours worked after the time their shifts officially ended but not pay employees for time worked before their shifts officially started. (See, e.g., **Exhibit 2**, at 1-2) (showing Named Plaintiff worked 12.15 hours on March 3, 2023, between 5:55AM and 6:04 PM but was paid for only 12.07 hours (the period between 6AM and 6:04PM) and worked 6.08 hours on March 19, 2023, between 5:55 AM and 12:00 PM but was paid for only 6 hours.

45.     Defendant continued to track this "before shift" time worked but refused to pay its employees for this time.

46.     This change resulted in even larger amounts of time being deducted from Named Plaintiff's paychecks.

8

47. Named Plaintiff began complaining internally to his supervisors and Defendant's Human Relations department about this unlawful policy.

48. On December 29, 2022, Named Plaintiff sent a text message (**Exhibit 5**) to his direct supervisor, Chris Stiteler, depicting a portion of his time card for December 23, 2022, and stating:

> I am missing 13 minutes from my check for this day. This is not the only example of time that is not being credited to me as time worked. I have missing time all the way back to October of 2021. I hope Eldor and I can come up with a solution to this matter easily and promptly.

49. Mr. Stiteler responded, "I think we should sit and talk with Priscilla [Vance] together about this. Especially since this had been going on for so long."

50. Named Plaintiff responded, "100% agreed. You think there's any chance of doing that next week sometime?"

51. Mr. Stiteler responded, "Absolutely. We can make it a priority."

52. On January 3, 2023, Named Plaintiff and Defendant's HR Generalist, Priscilla Vance, met to discuss Named Plaintiff's allegations of FLSA violations.

53. During the meeting, Ms. Vance told Named Plaintiff he could avoid the before-work problem if he waited to clock in until 6:00AM each shift.

54. However, Named Plaintiff's 2nd-level supervisor and Defendant's Department Manager, Joe Washburn, required Named Plaintiff to arrive early each shift to perform handoffs.

55. Named Plaintiff left the meeting convinced his concerns were being ignored as Defendant expected him to continue arriving early but now suggested he wait until 6:00AM to officially clock in.

9

56. Following the meeting, Named Plaintiff sent an e-mail (**Exhibit 6**) to Ms. Vance to memorialize the discussion they had earlier that day. The subject of the e-mail is "Review of our conversation today."

57. In the e-mail, Named Plaintiff summarizes the discussion from earlier that day and asks Ms. Vance to "[p]lease let me know if anything is wrong."

58. The e-mail states:

We discussed:
-Time that I worked and was not paid for. This includes the current pay period and unpaid time dating all the way back to October 2021.

-Solutions to not only ensure I and everybody are getting paid for time worked, but also to improve efficiency of the production line(s).

-If no solution can be agreed upon, my clocking in at 5:59am-6:00am to ensure I do not "work for free".

59. Defendant's employee in charge of payroll, Joshua Fish, told Named Plaintiff Defendant was not going to pay its employees for the "before-shift" time worked because it saved Eldor "6 figures a year."

60. When Named Plaintiff repeated his concerns about Defendant's FLSA violations to Mr. Washburn, he responded, "If you don't like it, a Turkish worker will take your place."[2]

61. On March 20, 2023, Named Plaintiff requested an unscheduled evaluation because he was beginning to feel targeted due to his repeated complaints about wage theft.

62. Named Plaintiff's supervisor, Chris Stiteler, completed the evaluation on April 1, 2023. (**Exhibit 7**).

63. Mr. Stiteler initially gave Named Plaintiff a score of 86 (a 10-point drop from Plaintiff's first evaluation, but still an excellent score).

---

[2] Eldor has a large manufacturing plant in Gaziemir, in the Izmir region of Turkey.

10

64. After discussing the evaluation with Named Plaintiff, Mr. Stiteler increased Named Plaintiff's score to 90 due to increasing his rating in the "Work Efficiency" and "On Time Task Execution" categories.

65. Named Plaintiff asked why he only received 8 out of 10 possible points in the category of "Discipline."  (See id.)

66. Named Plaintiff had never been disciplined – formally or informally – while working for Defendant.

67. Mr. Stiteler told Named Plaintiff he needed to stop complaining about Defendant's policy of not paying its employees for "before-shift" time.

68. To emphasize this point, Mr. Stiteler wrote "5:55 AM" and "$$" in the "discipline" row and underlined each notation.

69. On April 19, 2023, (less than three weeks after Named Plaintiff complained about Defendant's FLSA violations during his evaluation), Defendant terminated Named Plaintiff despite consistently outstanding evaluations and no history of discipline whatsoever.

### VII.   CAUSES OF ACTION

#### COUNT I
**Collective Action for FLSA Violations**

70. Named Plaintiff hereby incorporates by reference paragraphs 1-69 as if fully restated in this Count I.

71. Under the FLSA, Defendant was required to pay Named Plaintiff and all other similarly situated class members for all time Defendant "suffer[ed] or permit[ted them] to work." 29 USC §§ 203(g), 206(a).

72. Moreover, under 29 USC § 207(a)(1) of the FLSA, Defendant was required to pay Named Plaintiff and all other similarly situated class members at a rate not less than "one and one-half times the regular rate at which he is employed

73. By virtue of the acts described above, Defendant knowingly paid Named Plaintiff and all other similarly situated class members hundreds of thousands of dollars less in wages than they earned by failing to pay them for all time worked before their shifts officially started and after their shifts officially ended.

74. Under § 216(b) of the FLSA, Defendant is liable to Named Plaintiff and other class members in the amount withheld, plus an additional amount in liquidated damages.

75. Under § 216(b) of the FLSA, Defendant is also liable to pay the attorney fees and costs Named Plaintiff and other class members incur pursuing a remedy in this matter.

## COUNT II
### Class Action for VWPA Violations

76. Plaintiff re-alleges and incorporates by reference paragraphs 1-75 as if fully restated in this Count II.

77. By virtue of the acts described above, Defendant knowingly paid Named Plaintiff and all other similarly situated class members hundreds of thousands of dollars less in wages than they earned by failing to pay them for all time worked before their shifts officially started and after their shifts officially ended.

78. Under Va. Code Ann. § 40.1-29.2, Named Plaintiff and other similarly situated class members are entitled to recover from Defendant "the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act in an action brought pursuant to the process in subsection J of § 40.1-29."

79. Va. Code Ann. § 40.1-29(J) states, in relevant part :

if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

80. Under Va. Code Ann. § 40.1-29(K), "a person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information."

81. "Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Id.

82. Defendant acted 'knowingly' because it had actual knowledge of the hours Named Plaintiff and other similarly situated class members worked and knew it was required to pay these employees in compliance with overtime laws.

83. Defendant is therefore liable to Named Plaintiff and other class members in the amount withheld, plus an additional amount in liquidated damages -or- triple damages if this Court finds Defendant knowingly violated Va. Code Ann. § 40.1-29.2.

84. Defendant is also liable to pay the attorney fees and costs Named Plaintiff and other class members incur pursuing a remedy in this matter.

13

## COUNT III
### Individual Action for Whistleblower Retaliation
### (Va. Code Ann. § 40.1-27.3)

85. Austin Jenkins hereby incorporates by reference paragraphs 1-85 as if fully restated in this Count III.

86. Mr. Jenkins reported, in good faith, violations of state and federal law when he reported to his supervisor and Defendant's Human Resources Director that he believed Defendant was violating the law by refusing to pay him and other employees at Eldor for time worked before the official start times and after the official end times for their shifts.

87. As a direct and proximate cause of Mr. Jenkins's good faith efforts to oppose Defendant's unlawful acts, Defendant terminated his employment.

88. Mr. Jenkins has lost his job and source of income as a result of opposing Defendant's unlawful conduct. Mr. Jenkins will lose wages and benefits at a rate of approximately $1,000 per week until he is reinstated to the position he previously held at Eldor.

89. Under Va. Code Ann. § 40.1-27.3(C), Plaintiff is entitled to reinstatement, lost wages, and reasonable attorney fees and costs.

## COUNT IV
### Bowman Claim
### (Virginia Common Law)

90. Austin Jenkins hereby incorporates by reference paragraphs 1-90 as if fully restated in this Count IV.

91. Defendant terminated Mr. Jenkins as a direct and proximate result of his complaining about Defendant's violations of state law.

92. Under Virginia Common Law, Mr. Jenkins is entitled to compensatory and punitive damages as a result of Defendant's unlawful termination of his employment.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Austin Jenkins requests judgment against Defendant and moves this Court for an Order:

A. Certifying the proposed FLSA collective action under 29 U.S.C. § 216(b);

B. Certifying the proposed VWPA class action under Fed. R. Civ. P. 23;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Directing prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) to the VWPA class, apprising them of the pendency of this action and notifying them they must affirmatively opt out of the class if they do not wish to be included in this action;

E. Declaring that Eldor violated the FLSA by failing to pay its employees for all work performed during handoffs;

F. Awarding Named Plaintiff and all others who join the proposed FLSA collective action damages in the amount of all wages unlawfully withheld, an equal amount in liquidated damages, plus pre-judgment and post-judgment interest, attorney fees, and costs;

G. Awarding Named Plaintiff and all others who remain in the proposed VWPA class action damages in the amount of all wages unlawfully withheld, plus an equal amount in liquidated damages, at 8%, plus attorney fees and costs;

H. Declaring that Eldor violated the VWPA by failing to pay its employees for all work performed during handoffs;

I. Requiring Defendant to reinstate Austin Jenkins to his previous position at Eldor;

J. Awarding Austin Jenkins compensatory damages in the amount to be determined once Mr. Jenkins is reinstated and $350,000 in punitive damages for his unlawful termination;

K. Awarding Austin Jenkins his costs and fees incurred pursuing his individual claims as provided by Va. Code Ann. § 40.1-29 and Va. Code Ann. § 40.1-27.3; and

L. Providing such other and further relief as this Court may deem necessary, just, and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

**AUSTIN JENKINS, on behalf of himself and all others similarly situated**

By: _____
Christopher E. Collins

*Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*