IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | | |
|---|---|---|
| AUSTIN JENKINS, on behalf of | ) | |
| himself and others similarly situated, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 7:23-cv-00297 |
| | ) | |
| ELDOR AUTOMOTIVE POWERTRAIN | ) | |
| USA LLC | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiff Austin Jenkins and Defendant Eldor Automotive Powertrain USA LLC respectfully request approval of a settlement reached in relation to Jenkins' individual and collective/class Fair Labor Standards Act ("FLSA") and Virginia Wage Payment Act ("VWPA")[1] claims (all individual and class claims are collectively referred to as "the wage claims"). This settlement resolves only the wage claims. As outlined below, the Court should grant approval of the settlement because it is a reasonable resolution of a *bona fide* dispute over the wage claims.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

    **a.   Jenkins' Role at Eldor**

Eldor hired Jenkins as a Line Technician ("Line Tech") in September 2021. As a Line Tech, Jenkins was assigned to one of four sections of Eldor's manufacturing assembly line (winding, case, resin, or final). Line Techs are generally responsible for walking up and down their assigned sections of the line to monitor the manufacturing process and address technical issues as

---

[1] Jenkins' VWPA claims are premised on alleged violations of the FLSA.

{4886-9920-6884}

parts move down the line. Eldor terminated Jenkins on April 19, 2023. The parties dispute the reasons for termination.

### b. Jenkins' Wage Claims

On May 19, 2023, Jenkins filed his Complaint.[2] (ECF No. 1). Jenkins alleged that Eldor failed to pay him for time he alleged he worked after he clocked in and before the start of his shift ("post-clock-in pre-shift time"). He alleged that Eldor allegedly failed to pay other similarly situated employees as well for this post-clock-in pre-shift time. Eldor denied Jenkins' allegations and denied that Jenkins is entitled to pay for this time as it was not compensable working time and that Eldor's management and Human Resources employees advised Jenkins on numerous occasions to not perform any work before the start of his shift start time and that he did not need to arrive to work before the start of his shift start time.

On March 1, 2024, Jenkins filed a Motion for Conditional Certification. (ECF No. 24). Jenkins asked this Court to certify two collectives and two classes. The first class included Eldor's employees in the roles of Line Technicians, Quality and Facility Technicians, Specialists, and Shift Engineers and alleged that Eldor failed to pay not only him but these other employees for their post-clock-in, pre-shift time. The second class, which was omitted entirely from Jenkins' Complaint, included all non-exempt employees at Eldor who received any form of non-discretionary bonus and was premised on Jenkins' argument that Eldor failed to include quarterly non-discretionary Key Performance Indicator ("KPI") bonuses in its regular rate of pay calculations for purposes of calculating overtime premiums.

On March 15, 2024, Eldor tendered full payment (including interest and treble damages) to Jenkins by direct depositing the maximum relief he could recover in litigation into his bank

---

[2] Jenkins amended his Complaint on July 10, 2023. (ECF No. 6).

account. That same day, Eldor filed a motion to dismiss Jenkins' Complaint based on mootness and lack of subject matter jurisdiction and filed an opposition to Jenkins' Motion for Conditional Certification. (ECF Nos. 26 and 28). In Eldor's Motion to Dismiss, Eldor argued that Jenkins' claims were moot, that the Court lacked subject matter jurisdiction because there was no further relief that Jenkins could obtain through litigation on his post-clock-in pre-shift time claim, and that he could no longer serve as a Named Plaintiff. (ECF No. 26).

In its Opposition to Jenkins' Motion for Conditional Certification, Eldor argued that Jenkins request to have his and the allegedly similarly situated other employees' claims proceed by way of class actions under the VWPA in addition to collective actions under the FLSA was improper. Eldor argued that Jenkins was not similarly situated to the other technicians and engineers he sought to represent on his post-clock-in pre-shift time claim. Eldor also argued that Jenkins could not obtain certification of a collective or class for the KPI bonus claim as that claim was entirely omitted from his Complaint. Finally, Eldor argued that Jenkins' individual wage claims were moot and therefore he could no longer serve as a Named Plaintiff on behalf of any collective or class.

On March 18, 2024, Jenkins filed his Opposition to Eldor's Motion to Dismiss, (ECF No. 29), and Eldor filed its Reply Brief on March 22, 2024, (ECF No. 30). On March 25, 2024, Eldor filed its Reply Brief in Support of Its Motion to Dismiss. (ECF No. 31). On March 28, 2024, Jenkins filed his Motion for Leave to File First Amended Complaint, seeking to amend his Complaint to add individual, collective, and class claims related to the KPI bonus. (ECF No. 32). On April 11, 2024, Eldor filed its Opposition to Jenkins' Motion for Leave to File First Amended Complaint, arguing that Jenkins cannot add a now-moot individual claim to his Complaint and, because his individual claim was moot, cold not serve as a representative on behalf of a collective

or a class. (ECF No. 33). On April 22, 2024, Jenkins filed his Reply Brief in Support of His Motion for Leave to File First Amended Complaint. (ECF No. 37).

On April 29, 2024, Judge Urbanski referred the case for a settlement conference with U.S. Magistrate Judge Kailani Memmer. (ECF No. 39). On April 30, 2024, this Court held a hearing on Eldor's Motion to Dismiss, Jenkins' Motion for Conditional Certification, and Jenkins' Motion for Leave to File Amended Complaint. (ECF No. 40.) These motions remain pending.

The parties attended two separate settlement conferences with Judge Memmer and ultimately resolve the wage claims on July 25, 2024. The parties were not able to resolve Jenkins' retaliation claims. The parties worked together to finalize the terms of the Settlement Agreement on the wage claims. The Settlement Agreement is attached and incorporated as **Exhibit 1**. The parties jointly move this Court to enter an order approving the Settlement Agreement.

## II.   SETTLEMENT AGREEMENT TERMS

The Settlement Agreement includes the following key terms:

a.   **<u>Jenkins' individual wage claims:</u>** The parties agreed that the maximum amount Jenkins could recover on his individual wage claims was $1,721.49, which included the alleged unpaid time between when he clocked in and the start of his shift, any overtime premium resulting from the KPI bonus, treble damages, and interest at a rate of 8% as could have been imposed under the VWPA. Eldor paid Jenkins this settlement amount on March 15, 2024.

b.   **<u>Line Technician collective wage claims:</u>** The parties agreed that Jenkins' was most similarly situated to only other Line Technicians for purposes of the allegedly unpaid post-clock-in pre-shift time claim. The parties further agreed that, assuming Jenkins was similarly situated to the other fifteen Line Technicians, they would be entitled to similarly

situated awards if they were to have succeeded at trial. Therefore, the parties agreed that Eldor would pay each Line Technician the amount Jenkins' received ($316.00) to account for the interest that could have been imposed under the VWPA.

c. **KPI Bonus collective wage claims:** Eldor paid non-exempt employees that were still working at Eldor for any alleged unpaid overtime premium due as a result of Eldor allegedly not factoring the KPI bonus into its regular rate of pay calculations. (See Appendix B to Settlement Agreement). Eldor paid each employe the amount allegedly due times two to account for liquidated damages under the FLSA and 8% interest to account for what interest could have been imposed under the VWPA. The total amount of money Eldor paid to these employees was $42,554.11.

d. **Jenkins' Counsel's fees and costs:** Eldor will pay Jenkins' counsel $36,000.00 for all attorneys fees and costs associated with their pursuit of the wage claims.

e. **Wage Claim Releases:** The releases are limited only to Jenkins' wage claims and any alleged claim related to the post-clock-in, pre-shift time for the similarly situated Line Technicians. Line Technicians will receive a notice of release of such claim with the check and will be notified that, by depositing the check, they agree to the release of such claim. Line Technicians therefore have a right to not release any alleged post-clock-in pre-shift time claim and, effectively, not opt into the settlement. There is no release required or imposed for the alleged KPI bonus payment.

f. **No release of Jenkins' retaliation claims:** The settlement does not cover Johnson's remaining retaliation claims.

g. **No confidentiality provision:** There is no confidentiality provision.

Accordingly, the settlement amount provides a significant recovery for Jenkins, Eldor's Line Technicians, and all non-exempt employees that received KPI bonuses. The settlement does not run afoul of any public policy concerns, does not require Jenkins' or any putative collective members to release anything more than the respective wage claims at issue, and does not impose any confidentiality requirements on Jenkins or any putative collective members.

## III. THE COURT SHOULD APPROVE THIS SETTLEMENT AND DISMISS THE ACTION WITH PREJUDICE

The Court should approve the Settlement Agreement and dismiss the action with prejudice because the settlement is the product of contested litigation, the parties are represented by competent and experienced counsel, the settlement was achieved through arms-length negotiations between competent counsel and Judge Memmer, and the Settlement Agreement reflects a reasonable compromise over disputed procedural and substantive issues.

Settlement is an important aspect of the judicial process that is treated with favor by the court. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002); *see also Lomascolo v. Parsons Brinkerhoff Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). The settlement of FLSA claims is likewise encouraged but requires Court approval to ensure that the parties reached a fair and reasonable resolution of a bona fide dispute. *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) ("[T]here is a judicial prohibition against the unsupervised waiver or settlement of [FLSA] claims."), *superseded on other grounds by regulation*, 73 Fed. Reg. 67987 (Nov. 17, 2008), *as recognized in Whiting v. Johns Hopkins Hosp.*, 416 Fed. App'x 312 (4th Cir. 2011); *Howell v. Dolgencorp, Inc.*, 2011 WL 121912, at *I (N.D. W.Va. Jan. 13, 2011) ("[C]laims for unpaid wages arising under the FLSA may be settled or compromised only with the approval of the District Court or the Secretary of Labor."); *Browne v. The Pantry, Inc.*, 2011 WL 5119263, at *2 (M.D.N.C. Oct. 28, 2011) (noting that FLSA cases "cannot be settled without a court finding

that the settlement is fair and reasonable") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

When considering whether to approve an FLSA settlement, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g., LaFleur v. Dollar Tree Stores, Inc.*, F. Supp. 3d 588, 593 (E.D. Va. 2016); *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014); *Lopez v. NTL LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010). As the Court noted in *LaFleur v. Dollar Tree Stores, Inc.*, "[i]n determining whether a settlement is 'fair, adequate, and reasonable' there is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed." 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (internal citations omitted). When evaluating whether to approve a settlement agreement, the Court may consider the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*

As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009). This is exactly what has occurred here.

A. **The Parties had a *Bona Fide* Dispute over FLSA Coverage**

To merit court approval, the settlement must resolve a bona fide dispute over an alleged violation of the FLSA. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores*, 679 F.2d at 1355). *Bona fide* procedural and substantive dispute over each individual and collective/class claim clearly exists in this case.

i. **Substantive Disputes**

1. Post-Clock-In Pre-Shift Time

The parties dispute whether Eldor is liable for any post-clock-in pre-shift and KPI bonus claims as it relates to Jenkins and any similarly situated employees. Jenkins alleged that he believed Eldor should have paid a broad class of employees for the time between when they clocked in and when their shift started. Jenkins' proposed class included other Line Technicians, Quality and Facility Technicians, Specialists and Shift Engineers. Jenkins alleged that the post-clock-in pre-shift time was compensable working time because he was performing a shift handoff with the Line Technician whose shift was ending.

Eldor denied that the time between when Jenkins (and other Line Technicians) clocked in and the shift start time was compensable working time because handoffs were to occur at an employee's shift start time. Eldor's paid employees from the start of their shift until when they clocked out and its policy was that Line Technicians would remain clocked in, past their shift end time to complete a handoff and would be compensated for performing the handoff at the shift start time of the next Line Technicians' shift. Eldor advised Jenkins on numerous occasions to not perform any work (including handoffs) before his shift start time and further advised him that he did not need to show up to work before his shift start time.

Eldor also disputed whether the broader class of employees Jenkins' identified were similarly situated to Jenkins as many of these employees did not perform handoffs like Jenkins and had completely different schedules than Jenkins. Further, assuming some employees clocked in before their shift start time, there is no indication that they also allegedly performed compensable handoffs between when they clocked in and when their shifts started as many employees do not perform compensable work during this time but rather get coffee, go to the cafeteria, workout in the gym, or chat in the breakroom or locker room. Further, if any Line Technicians did perform working time, such time would be *de minimis* and therefore their claims would be barred by such an affirmative defense.

Jenkins' alleged unpaid wages for the post-clock-in pre-shift time was $316 after calculating difference between when he clocked in and when his shift started. For purposes of settlement, the parties agreed to only include other Line Technicians who performed compensable handoffs similar to Jenkins in the settlement class. Eldor agreed to pay these other Line Technicians the same $316 on the basis that they were similarly situated to Jenkins for purposes of being required to perform handoffs, but that there was no evidence they performed handoffs or other compensable work between when they clocked in and when their shifts started.

### 2. KPI Bonus Overtime Premium

The parties dispute whether Eldor is liable for not having factored its KPI bonus into its regular rate of pay calculations for purposes of calculating overtime premiums for non-exempt employees. Jenkins alleged that the KPI bonus is a non-discretionary bonus that Eldor was required to factor into its regular rate calculation for purposes of determining each nonexempt employee's overtime premium.

Eldor disputed whether the full KPI bonus would be required to be factored into regular rate calculations because only one of seven KPI bonus factors (attendance) is in an employee's control. Further, whether the KPI bonus is provided at all to employees during any given quarter is dependent on the overall manufacturing plant's success.

Eldor paid all nonexempt employees who were still employed in July of 2024 any alleged overtime premium difference they would have been due if Jenkins had received a judgment on his claim and further paid double this amount to account for liquidated damages under the FLSA and 8% interest to account for the maximum amount they could have recovered under the VWPA.

### ii.    Procedural Disputes

In addition to *bona fide dispute* over the substantive law, the parties disputed whether Jenkins and the putative class members could proceed on their claims due to procedural bars.

Jenkins attempted to proceed on both class actions and collective actions on both wage claims. Eldor disputed whether Jenkins' claims could proceed on a class action.

Further, Eldor paid Jenkins in full for the maximum amount he could individually recover on both wage claims. Specifically, Eldor paid Jenkins on the post-clock-in pre-shift claim before he obtained conditional certification and paid Jenkins on the KPI bonus claim before he added it as a claim to his lawsuit and before he obtained conditional certification. Eldor argued that Jenkins' individual wage claims were therefore moot as no case and controversy remained and that he could no longer serve as a class representative.

Eldor's assertion of affirmative defenses and denial of liability on substantive and procedural bases shows that this was a *bona fide* dispute over whether any overtime compensation is due. *See Lomascolo*, 2009 WL 3094955, at *16. Nevertheless, if Jenkins ultimately prevailed, Eldor would be faced with the prospect of a monetary verdict, as well as the obligation to pay

litigation fees and costs. Similarly, if Eldor ultimately prevailed, Jenkins and both putative classes of employees would face dismissal of their claims and no recovery of any kind. Accordingly, the Court should conclude that a *bona fide* dispute exists between the Parties.

**B.  <u>The Proposed Settlement Amount is Fair and Reasonable</u>**

Consideration of the six *LaFleur* factors confirms that the proposed settlement is fair and reasonable. During the litigation and mediation process, Jenkins was represented by counsel experienced in handling wage and hour collective actions. The settlement the parties ultimately reached was the product of arm's length negotiations. The settlement agreement provides relief to Jenkins and other non-exempt employees and eliminates the inherent risks both sides would bear if this case were to continue.

Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lomascolo*, 2009 WL 3094955, at *10 (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable . . . A court is entitled to rely on the judgement of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") (citation and internal quotation marks omitted); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of litigation in an FLSA case resulting in settlement as an indication of fairness); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (recognizing that "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and awards of litigation, a presumption of fairness, adequacy

and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

### i. Factor 1: The Extent of Discovery That Has Taken Place

The parties conducted all discovery related to document production, which included producing documents related to financial and pay records, clock-in records, and work tasks. This discovery allowed counsel to adequately evaluate Jenkins' claims and the maximum recovery he could obtain if he were successful at trial and, therefore, what amount would be a reasonable settlement. Accordingly, the parties have had adequate opportunity to "fairly evaluate the liability and financial aspects of [the] case." *Lomascolo*, 2009 WL 3094955, at *11 (quoting *In re: A.H. Robbins Co.*, 88 B.R. 755, 760 (E.D. Va. 1988)).

### ii. Factor 2: The State of the Proceedings, Including Complexity, Expense and Duration

The stage of the proceedings, complexity of the procedural issues, expense in litigating the issues, and likely duration of the litigation weighs in favor of approving the settlement. If the wage claims continued, the Court would rule on Eldor's Motion to Dismiss, Jenkins' Motion for Conditional Certification, and Jenkins' Motion for Leave to File Amended Complaint. Assuming Jenkins would be able to proceed after the Court's ruling on the motions, the parties would complete witness depositions, and Eldor would file a motion for summary judgment on all claims—not just the wage claims.

Following the completion of discovery and a ruling on the motion for summary judgment, the matter may have proceeded to an expensive trial, with risks to both sides, as well as likely appeals and post-trial motions. The current stage that the case has enabled counsel for the parties to access the respective strengths and weaknesses of their positions on the viability of the wage

claims and reach a conclusion that settlement of the wage claims is in the parties' best interests, without continuing to incur substantial time, effort, and expense of continuing the litigation.

### iii.    Factor 3: The Absence of Fraud or Collusion

There is absolutely no suggestion of fraud or collusion, and the settlement negotiations were conducted at arm's-length. In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred. *Lomascolo*, 2009 WL 3094955, at *12.

### iv.    Factor 4: The Experience of Plaintiff's Counsel

Jenkins' counsel has litigated multiple FLSA cases. Based on their knowledge of this matter and applicable case law, as well as through discussions with Eldor, Jenkins' counsel believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by counsel's opinion, [counsel's] opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702. Indeed, the final settlement amounts were the product of good-faith negotiations between the parties with the assistance of knowledgeable counsel. *See Lomascolo*, 2009 WL 3094955, at *12 (noting that there "is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable . . . A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion of the like, a court should be hesitant to substitute its own judgment for that of counsel."). In reviewing the opinions of counsel, "a court should bear in mind that counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla v. A & R Demolition, In.*, 2008 U.S. Dist. LEXIS 37449, at *15 (S.D. Tex. May 8, 2008) (internal citations omitted).

### v.    Factor 5: The Opinions of Class Counsel and Class Members

No putative plaintiffs have opted into the lawsuit as the parties have reached a settlement before the Court ruled on Jenkins' Motion for Conditional Certification. The Settlement Agreement provides that, if the settlement is approved, the Line Technicians will receive settlement checks with disclaimers that indicate that, by cashing the check, they release any post-clock-in pre-shift claim. The Line Technicians can effectively opt out of the settlement by refusing to cash their settlement checks. Eldor paid the non-exempt employees the alleged unpaid KPI bonus overtime premiums. The parties did not require a release for these claims.

### vi.    Factor 6: The Amount of Settlement in Relation to the Potential Recovery

As demonstrated by the parties' description of the *bona fide* dispute, if Jenkins were successful on his post-clock-in pre-shift claim, he would have recovered $316—the total Eldor paid him on this individual claim. This exact amount was calculated based on a more-than-favorable assumption that, if Jenkins performed work the minute he clocked in, then all of the time between when he clocked in and the start of his shift would be compensable working time.

Further, if Jenkins obtained conditional certification on this claim for other Line Technicians, and they were successful on their post-clock-in pre-shift class claim, they would likewise receive a similar sum as they would be deemed similarly situated to Jenkins.

If Jenkins were successful on his KPI bonus claim, he would have recovered $1,299.36 -- the total Eldor paid him on this individual claim. If Jenkins obtained conditional certification on this claim, the putative class would have included all non-exempt employees that received the KPI bonuses and worked at Eldor over a three-year period. There were procedural and substantive risks associated with this claim, including not recovering anything for any class members if his claims were deemed moot. Therefore, the parties compromised by agreeing to backpay all non-exempt

employees the exact amount of the alleged unpaid overtime premiums associated with this claim to all non-exempt employees on payroll, including liquidated damages and interest.

## IV.    CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court approve the settlement of Jenkins' FLSA claims as fair and reasonable and dismiss this case, all parties bearing their own costs, with prejudice.

Dated: November 8, 2024

Respectfully submitted,

_s/ Christopher E. Collins_
Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
YUGO COLLINS, PLLC
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
chris@yugocollins.com
mia@yugocollins.com

_Counsel for Plaintiffs_

_/s Leah M. Stiegler_
Michael Gardner, Esq. (VSB No. 80380)
michael.gardner@woodsrogers.com
10 South Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Telephone: (540) 983-7533
Facsimile: Main (540) 983-7711

Leah M. Stiegler, Esq. (VSB No. 89602)
leah.stiegler@woodsrogers.com
901 East Byrd Street, Suite 1550
Richmond, Virginia 23219
Telephone: (804) 956-2050
Facsimile: (804) 799-7885

_Counsel for Defendant_